UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05cv642 SNL |
| ) | |
| MAGELLAN BEHAVIORAL HEALTH, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER

Jeffrey Taylor, a former employee of Magellan Behavioral Health, brought suit under the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010 *et seq.,* after being laid off during a reduction in work force. Plaintiff brings charges of disparate impact and disparate treatment discrimination, claiming that he was terminated because he is a white male. This is before the Court on Defendant's Motion for Summary Judgment (#16), filed January 23, 2006.

## SUMMARY JUDGMENT STANDARD

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise

1

genuine issues of material fact." *City of Mt. Pleasant v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962). The burden is on the moving party. *City of Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion, and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). "Because [employment] discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). Therefore, it is appropriate

only in "those rare instances where there is no dispute of fact and there exists only one conclusion." *Johnson v. Minn. Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991). With these principles in mind, the Court turns to an examination of the facts.

## FACTUAL BACKGROUND

In 2001, Priscilla Taylor (no relation), the Vice President of Service Operations for Defendant, contacted Plaintiff and offered him a supervisory position in the Aetna Claims Unit (Unit). Plaintiff accepted the position, and began working for Defendant on April 16, 2001. Plaintiff was one of five claims supervisors in the unit, working alongside four women: Karen Eddlemen, Lenel Clark, Jan Shepherd, and Virginia Ficocelli. The claims supervisors were in charge of fifty-eight claims processors, fifty-four of whom were female. The supervisors reported to two managers, Lisa Boyer and Kelly Hiene, the managers reported to Priscilla Taylor, and Ms. Taylor reported to Senior Vice President Jan Williams. In sum, the Unit had four male claims processors and one male supervisor; all remaining personnel were women.

In 2003, the Unit began using an electronic claim processing system called CAPS. This system greatly improved the Unit's efficiency, which in turn reduced the Unit's need for employees. Defendant decided to lay off nineteen claims processors and two claims supervisors. This was the first time that either Priscilla Taylor or Jan Williams had conducted a reduction in work force, and they received no training in how to proceed. Instead, Williams and Ms. Taylor created a process whereby the managers rated the supervisors abilities through five criteria delineated on a spreadsheet called the RIF Tool.

The supervisors were evaluated based on their experience, last performance rating, CAPS skills, computer skills, and disciplinary measures. Managers Kelly Heine and Lisa Boyer ranked the supervisors as follows: Karen Eddlemen had twenty years of experience, a performance rating of 3.34, high CAPS skills, high computer skills, and was never disciplined; Lenel Clark had ten years of experience, no available performance rating,[1] high CAPS skills, high computer skills, and was never disciplined;[2] Jan Shepherd had ten years of experience; a performance rating of 3.8, superior CAPS skills, average computer skills, and was never disciplined; Plaintiff had six years of experience; a performance rating of 3.0, minimal CAPS skills, average computer skills, and was never disciplined; and Virginia Ficocelli had two years of experience, a performance rating of 3.08, minimal CAPS skills, average computer skills, and was never disciplined.

Because all other factors were so similar, Priscilla Taylor decided to retain the supervisors with the most claims experience, and Plaintiff and Virginia Ficocelli were selected for layoffs. But Ficocelli was not terminated. According to Ficocelli's deposition testimony, she noticed changes in the Unit and thought layoffs might be on the horizon. Ficocelli applied for, and was awarded, a position in another department, thereby allowed her to remain in Defendant's employ despite the layoffs within the Unit. Plaintiff, however, did not seek a job in another department, and was informed of his termination on June 11, 2005. In December of that year, Plaintiff filed a complaint

---

[1]There was no recent performance rating for Lenel Clark because she was hired shortly before the performance review was conducted. Because there was no rating available, Clark's manager gave a verbal assessment of her performance, reporting it to be on par with the other supervisors.

[2]Clark's file contained a written warning from her supervisor, but Human Resources rescinded it after deciding that the discipline was not warranted. Therefore there was no disciplinary action included in Clark's ranking.

4

with the Missouri Commission on Human Rights. After exhausting his administrative remedies, Plaintiff was issued a Notice of Right to Sue, and brought suit in the Circuit Court of St. Louis County, Missouri. Defendant properly removed the case to this Court and filed a Motion for Summary Judgment. Responsive pleadings have been filed, and the Motion is ripe for review.

## DISCUSSION

Plaintiff, who complains that he was the victim of disparate treatment and disparate impact discrimination, brings suit under the Missouri Human Rights Act (MHRA). In its Motion for Summary Judgment, Defendant argues that Plaintiff did not establish a *prima facie* case for either type of discrimination. The Court will analyze Plaintiff's MHRA claims in the same manner as those brought under Title VII. *See LeGrand v. Area Res. for Cmty. & Human Servs.*, 394 F.3d 1098, 1101 (8th Cir. 2005).

### I. Disparate Treatment

A plaintiff in a MHRA discrimination case can proceed in one of two ways. *Stacks v. Southwestern Bell Yellow Pages*, 996 F.2d 200 (8th Cir. 1993); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994). When a plaintiff produces direct evidence, such as statements by decision-makers, clearly showing that race, sex, or disability was a motivating factor in the employment decision, or at least significant circumstantial evidence showing a specific link between the discriminatory animus and the challenged employment decision, the burden-shifting standards established by *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L.Ed.2d 268 (1989), apply. *Stacks*, 996 F.2d. at 201 n. 1; *Beshears v. Asbill*, 930 F.2d 1348, 1353 (8th Cir.

1991). In the absence of such evidence, the guidelines set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), are applicable. *Stacks*, 996 F.2d. at 202; *Johnson v. Minn. Historical Soc'y*, 931 F.2d 1239, 1242-43 (8th Cir. 1991); *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 289 (8th Cir. 1982) (citing, *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)). Because Plaintiff did not produce any direct evidence or specific circumstantial evidence of discrimination, the Court will analyze his discrimination claims under the *McDonnell Douglas* standard.

To establish a *prima facie* case of discriminatory discharge during a reduction in workforce, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified to perform his job; (3) he suffered an adverse employment action; (4) he was treated differently from similarly situated people outside of his protected class; and (5) gender was a factor in his termination.[3] *Hesse v. Avis Rent a Car Sys., Inc.*, 394 F.3d 624, 631 (8th Cir. 2005). Once Plaintiff makes this showing, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Plaintiff must then establish that Defendant's articulated reasons are pre-textual and that Plaintiff's sex was the motivating reason. At all times, the plaintiff employee possesses the ultimate burden of proving that he was the victim of intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Hesse*, 394 F.3d at 631.

---

[3]In Plaintiff's complaint, he also brings claims of disparate treatment on the basis of race. However, Plaintiff failed to make a single argument defending his claim of race discrimination in his responsive pleadings. Because the Plaintiff did not believe his claim to be worthy of argument, the Court does not find it worthy of a lengthy discussion. Plaintiff has introduced no evidence showing that he was treated differently from similarly situated non-Caucasians. The Court will not sift through the Plaintiff's record to find support for his allegations. *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004). Therefore, Plaintiff did not establish a *prima facie* case of discrimination on the basis of race.

The first three elements of Plaintiff's *prima facie* claim of sex discrimination are undisputed. As evidence of the fourth element, Plaintiff asserts that Virginia Ficocelli, the female supervisor chosen for layoffs, was offered an "inside" job opportunity and Plaintiff was not. Plaintiff also complains that the performance review used to evaluate him was over one year old, yet the other supervisors were ranked on current performance reviews. Finally, Plaintiff claims that he was improperly ranked as having minimal CAPS skills. To show that gender was a fact in his termination, Plaintiff argues that Defendant failed to properly document the layoffs, and failed to create either an adverse impact analysis or a disparate impact analysis to determine if the layoffs were discriminatory in nature.

Although the threshold of proof required in establishing a *prima facie* case is "minimal," *Pope v. ESA Servs.*, 406 F.3d 1001, 1007 (8th Cir. 2005), Plaintiff has failed to meet this low standard. His complaints as to the date of his performance review are patently false. The performance ratings for all employees, including Plaintiff, were taken from a review conducted in April of 2002. His argument that Virginia Ficocelli was offered an "inside" job is based on supposition and inadmissable hearsay. Ficocelli denies that she was given any inside opportunity, stating that she applied for a position through an online job bank that was accessible to every employee, including Plaintiff. And Plaintiff provides no basis for the assertion that his CAPS skills were improperly reported. The Court will not deny a motion for summary judgement based on "unreasonable inferences or sheer speculation as fact." *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004).

Even if Plaintiff did make a *prima facie* case, he failed to argue that the reasons proffered by Defendant were pre-textual. It is undisputed that Defendant had a legitimate reason for instituting

7

layoffs, and Defendant produced a legitimate and non-discriminatory reason for firing Plaintiff – that he and Virginia Ficocelli had the least claims experience. Plaintiff makes no attempt to rebut Defendant's showing. Given the evidence, no reasonable person could find an inference of discriminatory conduct based on Plaintiff's sex.

## II. Disparate Impact

To state a *prima facie* claim for disparate impact discrimination, a Plaintiff need not prove that he was the victim of intentional discrimination. Instead, "the necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988). A plaintiff "must first ... identify[ ] a specific employment practice and then present[ ] statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer adverse employment action because of his or her membership in a protected group." *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 953 (8th Cir. 2001). If the plaintiff does this, the burden shifts to the defendant to produce evidence that demonstrates a "legitimate business reason for the challenged practice." *Id.* The burden then returns to the plaintiff, who "may still prevail by demonstrating that a comparably effective alternative practice would produce a significantly smaller adverse impact on the protected class." *Id.* at 954.

Plaintiff challenges Defendant's RIF tool and the layoffs. He argues that the RIF Tool is discriminatory because it is utilized by people who have no training, and is created by people who do not know how to perform, implement, or process a reduction in work force. As statistical evidence,

8

Plaintiff cites the fact that 78% of the supervisors are female. Plaintiff's sole argument is that the RIF Tool would not be discriminatory if Defendant had defined the criteria, trained the managers on how to properly rank the supervisors, properly dated the RIF Tool, and ensured that managers worked with the supervisors for more than a few months before ranking them.

Plaintiff's statistical data does not show that the layoffs or the RIF Tool had a disproportionate impact on men. Therefore, Plaintiff has not established a *prima facie* claim of disparate impact discrimination.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (#16) is **GRANTED**. Plaintiff's complaint is **DISMISSED** and the case is to be removed from the Court's docket.

**IT IS FURTHER ORDERED** that any remaining motions be **DENIED** as moot.

Dated this 14th day of March, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE